UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD ALLEN FABEL,<br>RODNEY ROLLNESS,<br>JOSHUA BINDER, and<br>RICKY JENKS, and<br>PAUL FOSTER.<br><br>Defendants. | Case No.  CR06-041L<br><br>ORDER DENYING FABEL'S MOTION TO SUPPRESS |

## I. INTRODUCTION

This matter comes before the Court on defendant Fabel's "Motion To Suppress Evidence" (Dkt. #299).  Fabel moves to suppress evidence seized during (1) the 1996 searches of the Washington Nomads clubhouse in Spokane, Washington (the "clubhouse") and of his residence; (2) the October 2001 search of the clubhouse; (3) the December 2003 search of the clubhouse; and (4) the February 2006 search of his residence and the clubhouse.[1]  Fabel argues that the warrants for these searches were obtained in violation of the Fourth Amendment.

---

[1] Though Fabel also identifies an August 2006 search of the clubhouse in his motion, he does not provide any further factual or legal argument related to that search. See Motion at p. 3.  The Court, therefore, does not address that search in this Order.

ORDER DENYING FABEL'S
MOTION TO SUPPRESS

## II. DISCUSSION

**A.     1996 and 2001 Searches**

Agents conducted searches of both Fabel's residence and the clubhouse in 1996 and 2001. Fabel argues that the Government has failed to turn over Rule 16 materials related to these searches and that the evidence seized should therefore be suppressed. While the Government acknowledges that copies of the warrants and accompanying affidavits from the January 1996 and October 2001 searches of the clubhouse have not yet been turned over to defendants, it maintains that the warrant and affidavit from the June 1996 of Fable's home has been delivered. Because defendant has either not yet had access to the underlying documentation surrounding these searches or had the chance to adequately brief the issues surrounding these searches, the Court will not address the arguments surrounding the suppression of these searches at this time.

**B.     December 2003 Search of the Clubhouse**

On November 25, 2003, Magistrate Judge Cynthia Imbrogno signed a warrant authorizing the search of the clubhouse. The warrant was based on an affidavit prepared by Special Agent John Ciccone from the Bureau of Alcohol, Tobacco and Firearms. Agents executed the search on December 3, 2003.

Fabel argues that evidence obtained from the December 2003 search should be suppressed for the following reasons: (1) the affidavit failed to provide sufficient facts to allow the magistrate judge to find that there was probable cause to believe that evidence would be found; (2) the affidavit was based on information from a confidential source that was neither trustworthy nor obtained in a reliable way; (3) the affidavit was based on stale information; (4) the warrant was overbroad; and (5) the seizure exceeded the scope of the warrant. For the reasons discussed below, defendant's motion to suppress evidence obtained in the 2003 search is denied.

ORDER DENYING FABEL'S
MOTION TO SUPPRESS

**1.   Probable Cause**

An affidavit for a search warrant must be "sufficient to justify a conclusion that the property which is the object of the search is probably on the premises to be searched at the time the warrant is issued." United States v. Greany, 929 F.2d 523, 524-25 (9th Cir. 1991). A magistrate judge's determination of probable cause is "accorded great deference and is reversed only if that determination is clearly erroneous." United States v. Terry, 911 F.2d 272, 275 (9th Cir. 1990). As such, this Court need only determine that the magistrate judge "had a substantial basis for finding probable cause." United States v. Chavez-Miranda, 306 F.3d 973, 978 (9th Cir. 2002). In making a probable cause determination, "[a] magistrate may 'draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.'" United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir. 1993) (quoting United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986)).

In this instance, the affidavit of Special Agent Ciccone provided a substantial basis for the magistrate's finding of probable cause. Specifically, the affidavit explains why Ciccone's experience and investigation led him to believe that "notes, records, or minutes of meetings dealing with the Laughlin incidence and the ongoing conflict with the Mongols" would be found at the clubhouse. Ciccone Affidavit at ¶ 26. The affidavit also describes why Ciccone believed financial information relevant to the investigation of "illegal activities, such as extortion, or illegal gun sales" would also be found. Ciccone Affidavit at ¶ 22, 26-27. These contentions were supported not just by the statements of confidential informants, but also by Ciccone's substantial experience in investigating the Hells Angels and recorded conversations of members of the Hells Angels made at other clubhouses. In short, there was ample factual support for the magistrate judge's finding of probable cause in this instance regardless of any reliability concerns related to confidential informants.

Nor was the information contained in the affidavit prohibitively "stale." "'The mere lapse of substantial amounts of time is not controlling in a question of staleness.'" United States

ORDER DENYING FABEL'S
MOTION TO SUPPRESS

v. Vaandering, 50 F.3d 696, 700 (9th Cir. 1995) (quoting United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir. 1993)).  Further, information is not stale if "there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises."  United States v. Lacy, 119 F.3d 742, 745-46 (9th Cir. 1997) (quoting United States v. Gann, 732 F.2d 714, 722 (9th Cir.1984)).  Here, only 19 months had passed since the Laughlin incident and the affidavit contained information detailing conversations made by other Hells Angels just six months prior to the warrant being executed.  Ciccone Affidavit at ¶ 25h.  It was therefore reasonable to conclude that evidence may still be found at the clubhouse.  Fabel's staleness argument is rejected.

Defendant also argues that the 2003 warrant was overbroad because "the affidavit contained no information establishing probable cause that anybody associated with the location to be searched was involved with racketeering activity."  Motion at p. 9.  In order to support the seizure of broad associational evidence in a RICO investigation the affidavit must do more than just establish that the suspect targeted by the warrant was associated with a particular enterprise.  United States v. Rubio, 727 F.2d 786, 794 (9th Cir. 1984).  Instead, the affidavit "must also provide probable cause to believe that the subject has conducted the affairs of the enterprise, at least in part, through a pattern of racketeering activity."  Id.  The Court concludes that the 2003 affidavit established probable cause to believe that the Hells Angels were involved in racketeering, that the members of the Washington Nomads were involved in the fight at Laughlin, and that this was part of the methods and means of the enterprise and evidence of its racketeering activity.  Ciccone Affidavit at ¶ 21.  As such, the Court concludes that the affidavit identified a sufficient nexus between the evidence sought and the alleged RICO violation to satisfy a finding of probable cause.

### 2. The Scope of the Warrant

Fabel also alleges, without great specificity, that agents seized evidence outside the scope of the warrant, particularly his personal documents.  Motion at p. 11.  Without more detail, the

ORDER DENYING FABEL'S
MOTION TO SUPPRESS

Court cannot conclude that these personal documents fell outside of the warrant's scope, especially given Fabel's role as the President of the Washington Nomads.

### 3. <u>Franks</u> Hearing

Fabel contends that he is entiteld to an evidentiary hearing on the validity of the affidavit. A defendant is entitled to such a hearing only if he makes a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978). The Court does not believe that defendant has made a substantial preliminary showing that Special Agent Ciccone made "intentionally or recklessly false statements." Nor does the Court believe that the omission of the allegedly false statements or inclusion of the alleged omissions would undermine the magistrate's finding of probable cause. Defendant's request for a <u>Franks</u> hearing is therefore denied.

## C. February 2006 Searches

On February 10, 2006, Magistrate Judge Imbrogno signed a warrant authorizing the search of the clubhouse and Fabel's residence in Spokane, Washington. These warrants were supported by an affidavit prepared and signed by Special Agent Stanley Meador of the Federal Bureau of Investigation.

Fabel seeks to suppress evidence obtained in these searches for reasons similar to those described above. Fabel's request to suppress evidence obtained during these searches is also denied.

### 1. Probable Cause

As with the 2003 warrant, Fabel argues that the Meador affidavit fails to provide any factual basis to support a conclusion that incriminating evidence would be found at either location. The Court again disagrees. The affidavit contains a sufficient factual background on Fabel's role in the Hells Angels and his alleged ties to the Laughlin incident, Michael Walsh's

1 murder and the trafficking of stolen motorcycles for the magistrate judge to have concluded that
2 probable cause existed to issue the search warrants.  <u>See</u> <u>e.g.</u> Meador Affidavit at ¶ 46.
3      Defendant also alleges, without providing additional details, that the information
4 provided by the confidential source in the affidavit was not trustworthy, reliable or corroborated.
5 A review of the affidavit demonstrates that Magistrate Judge Imbrogno had a sizeable amount of
6 information on which to make a credibility determination.  In addition to numerous citations to
7 information that corroborated the source's version of events, the affidavit also details the
8 informant's criminal background, the benefits he received for his cooperation, and instances
9 where he had not been accurate.  Given the amount of corroboration contained in the affidavit,
10 the Court will not second guess Magistrate Judge Imbrogno's probable cause determination.
11      The Court also cannot conclude that the information in the 2006 affidavit was "stale."  As
12 the Government explains in its memorandum, the evidence sought concerned matters that were
13 ongoing in nature.  If "there is sufficient basis to believe, based on a continuing pattern or other
14 good reasons, that the items to be seized are still on the premises" then a staleness argument
15 must fail.  <u>United States v. Lacy</u>, 119 F.3d 742, 745-46 (9th Cir. 1997) (quoting <u>United States v.</u>
16 <u>Gann</u>, 732 F.2d 714, 722 (9th Cir. 1984)).  Here, the evidence sought concerned the operation of
17 an allegedly ongoing criminal enterprise.  There was a reasonable basis to conclude that the
18 records and evidence being sought, such as records and patches, would be generated and
19 retained on an ongoing basis.
20      For the same reasons described with regard to the 2003 warrant, the Court finds that the
21 Meador affidavit established a sufficient nexus between racketeering activities of the Hells
22 Angels and the activities of Fabel.  Defendant's overbreadth argument is also rejected.
23      **2.     The Seizure of the Motorcycle**
24      Fabel argues that the motorcycle seized should be suppressed because it was seized
25 without probable cause.  The Government agues that the seizure falls under the plain view
26 exception.  "To fall within the plain view exception, two requirements must be met: the officers

ORDER DENYING FABEL'S
MOTION TO SUPPRESS

1 must be lawfully searching the area where the evidence is found and the incriminatory nature of
2 the evidence must be immediately apparent." Roe v. Sherry, 91 F.3d 1270, 1272 (9th Cir.
3 1996). The Court agrees.  Agents were lawfully searching Fabel's property pursuant to the
4 search warrant and Detective Liburdi reasonably believed that the illegal alteration of the
5 motorcycle was immediately apparent.² The seizure was therefore valid.

### 3. **Franks** Hearing

As with the 2003 warrant, the Court concludes that a Franks hearing is not appropriate at this time. The Court does not believe that the defendant has made an adequate preliminary showing that Agent Meador's alleged omissions were intentional or that they undermined the magistrate judge's conclusions regarding the existence of probable cause.

### III.  CONCLUSION

For the foregoing reasons, defendant Fabel's motion to suppress (Dkt. 299) is DENIED.

DATED this 6th day of February, 2007.

*[signature: Robert S. Lasnik]*

Robert S. Lasnik
United States District Judge

---

² Detective Liburdi's good faith and reasonable belief at the time of the seizure that motorcycle parts had been illegally altered is sufficient to satisfy the requirements of the plain view exception, even though his conclusion was later determined to be incorrect. See United States v. Stafford, 416 F.3d 1068, 1076-77 (9th Cir. 2005) (seizure of "grenade launcher" was justified under plain view exception, even though it was later determined that the device was actually used to propel flares, because the officer had probable cause to believe that the object was associated with criminal activity when it was seized.)

ORDER DENYING FABEL'S
MOTION TO SUPPRESS